| | | |
|---|---|---|
| WILLIAMS-SONOMA DIRECT, INC. and WILLIAMS-SONOMA RETAIL SERVICES, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:14-cv-02727-JPM-tmp |
| ARHAUS, LLC d/b/a ARHAUS FURNITURE and TIMOTHY STOVER, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING IN PART DEFENDANT TIMOTHY STOVER'S MOTION TO DISMISS AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT (ECF NO. 111)**

**AND**

**ORDER DENYING IN PART DEFENDANT ARHAUS, LLC'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT (ECF NO. 115)**

Before the Court are two motions: first is Defendant Timothy Stover's Motion to Dismiss and in the Alternative Motion for Summary Judgment, filed November 5, 2014 (ECF No. 111); and second is Defendant Arhaus, LLC's Motion to Dismiss or in the Alternative Motion for Summary Judgment as to the Second Amended Complaint, filed November 10, 2014 (ECF No. 115) (together, "the Motions"). In this Order, the Court addresses the Defendants' motions to dismiss this action under Rule 12(b)(1) and (7) of the Federal Rules of Civil Procedure and reserves ruling as to Defendants' motions for summary judgment.

For the reasons stated below, the Motions are DENIED IN PART: the Court denies Defendants' motions under Rule 12(b)(1) and (7) of the Federal Rules of Civil Procedure.

## I.  BACKGROUND

### A.  Factual Background

The facts relevant to the determination of the Motions are as follows.  Plaintiff Williams-Sonoma Direct, Inc. ("WSDI") initiated this action through the filing of a Complaint on September 18, 2014.  (ECF No. 1.)  WSDI is a wholly owned subsidiary of Williams-Sonoma, Inc.  (Prelim. Inj. Hr'g Tr. 42:16–42:19, Oct. 24, 2014, ECF No. 108 (testimony of Julie Whalen).)  WSDI asserted four theories of liability: violation of the Tennessee Uniform Trade Secrets Act ("TUTSA"), breach of contract, breach of the duty of loyalty, and tortious interference with contract.  (See Compl. ¶ 1.)  Specifically, WSDI alleged that Arhaus, LLC d/b/a Arhaus Furniture ("Arhaus"), Jessica Daugherty, Timothy Stover, and Brad Voelpel violated the TUTSA, and that Arhaus and Stover were continuing to violate the TUTSA at the time this action was filed.  (Id. ¶¶ 48–58.) WSDI's breach of contract claims were against Daugherty, Stover, and Voelpel.  (Id. ¶¶ 59–67.)  WSDI alleged that Voelpel breached his duty of loyalty.  (Id. ¶¶ 68–71.)  Last, WSDI brought tortious interference of contract claims against Arhaus and Stover.  (Id. ¶¶ 72–78.)

WSDI filed a Second Amended Complaint on October 22, 2014. (ECF No. 83.) The Second Amended Complaint added Williams-Sonoma Retail Services, Inc. ("WSRSI") as a plaintiff, and added a breach of duty of loyalty claim against Stover (id. ¶ 74). WSRSI is a wholly owned subsidiary of Williams-Sonoma, Inc. (Prelim. Inj. Hr'g Tr. 176:19-176:21, Oct. 24, 2014, ECF No. 108 (testimony of Steve Anderson).)

It is undisputed that while Daugherty, Stover, and Voelpel were employed at Williams-Sonoma, they signed the Williams-Sonoma, Inc. Code of Business Conduct and Ethics ("Code of Conduct") (Anderson Decl. Ex. A, ECF No. 13-6). Four provisions of the Code of Conduct are relevant in this case. First, the contract states that "references in the Code of Conduct to we, us, our, Williams-Sonoma, WSI or the Company are generally intended to mean Williams-Sonoma, Inc. and all its affiliates, divisions, brands, and subsidiaries, including its global subsidiaries, stores and offices." (Id. at PageID 94.) Second, the Code of Conduct states that it "also serves as an agreement between you and the Company." (Id. at PageID 95.) Third, the contract states how employees are to protect confidential information and defines confidential information:

> As associates of the Company, and for the benefit of
> ourselves as well as the Company, we each have a duty to
> safeguard our Company's trade secrets and Confidential
> Information and to refrain from any improper dealings with
> the confidential information of any other company,

including our competitors. Associates may not disclose
Confidential Information either while an employee of WSI or
at any time after employment ends, regardless of the reason
why employment ends. "Confidential Information" includes,
but is not limited to, all confidential, proprietary and
trade secret information that is not generally known and
that therefore has economic value to the Company. This
information includes all information, whether in written,
oral, electronic, magnetic, photographic or any other form,
that relates to: the Company's past, present and future
businesses, products, product specifications, designs,
drawings, concepts, samples, intellectual property,
inventions, know-how, sources, costs, pricing,
technologies, customers, vendors, other business
relationships, business ideas and methods, distribution
methods, inventories, manufacturing processes, computer
programs and systems, employees, hiring practices,
compensation, operations, marketing strategies and other
technical, business and financial information. Confidential
Information also includes the identity, capabilities and
capacity of vendors and of former vendors or others that
were considered but rejected and any non-public, personal
information about any associates, customers, contractors,
vendors or other parties, including, but not limited to,
social security, driver's license, credit or debit card
number or payment card numbers.

Additionally, associates may not bring or use any other
company's confidential information to WSI. All associates
must acknowledge by signing this Code of Conduct that they
have not brought any such confidential information from
prior employers to WSI.

(Id. at PageID 103-04.) Fourth, the Code of Conduct includes a

non-solicitation provision:

As part of our duty to safeguard the Company's trade
secrets and Confidential Information, associates may not,
either during their employment with the Company or for
twelve months afterward, directly or indirectly recruit,
solicit or induce, or attempt to induce, any employee,
consultant or vendor of the Company to terminate employment
or any other relationship with the Company. Additionally,
former associates may not use Confidential Information to
recruit, solicit, retain or hire any of the Company's
employees, consultants or vendors. By signing this Code of

4

Conduct, associates acknowledge that the restrictions
contained in this paragraph are necessary for the
protection of the business and goodwill of the Company and
are considered to be reasonable for that purpose, and agree
to be bound by such restrictions.

(Id. at PageID 104.)

In the Second Amended Complaint (ECF No. 83), Plaintiffs'
allegations may be generally described as follows. While
working for Plaintiffs, Daugherty, Stover, and Voelpel each
signed the Code of Conduct. Stover resigned from WSDI on July
18, 2014 and left on July 21, 2014. (Id. ¶ 30.) He joined
Arhaus approximately two weeks later as Arhaus' Chief Supply
Chain Officer. (Id.) Before leaving, Stover directed his
employees to do work for him "that he would use at Arhaus."
(Id. ¶ 74.) When he left, he took over one hundred confidential
documents with him. (Id. ¶ 30.) Plaintiffs allege that:

Stover immediately began unlawfully soliciting WSDI
employee Daugherty and WSRSI employee Voelpel (along with
several other WSDI employees) to violate their agreements
with WSDI and provide Stover with WSDI's confidential and
trade secret information for Stover's use at Arhaus.
Starting at the end of July and through September 2014,
Daugherty and Voelpel willfully participated in Stover's
unlawful plan. Daugherty used her WSDI and personal email
accounts to forward Stover, without authorization, WSDI's
confidential information. Voelpel similarly used his
company and personal email accounts to forward Stover,
without authorization, WSDI's confidential information.

(Id.)

## B.    Procedural Background

WSDI filed its Complaint on September 18, 2014 (ECF No. 1) and a Motion for Temporary Restraining Order on September 19, 2014 (ECF No. 13).  Judge Samuel H. Mays, Jr. held a hearing on the Motion for Temporary Restraining Order on September 29 and 30, 2014.  (ECF Nos. 52, 54.)  Arhaus and Stover filed a Joint Motion to Dismiss on September 26, 2014.  (ECF No. 31.)  On September 29, 2014, WSDI amended the Complaint so as to correct a technical pleading defect.  (ECF No. 51.)  On September 30, 2014, Judge Mays issued an order granting in part and denying in part the Motion for Temporary Restraining Order.  (ECF No. 56.)  The order required all defendants to preserve evidence, and ordered defendants not to acquire, access, disclose, or use any of WSDI's trade secrets -- or to attempt to do so.  (Id. at 3-4.)  The order further restrained Daugherty and Stover from: acquiring, accessing, disclosing or using, or attempting to acquire, access, disclose, or use WSDI's or its derivatives' confidential information; and from soliciting employees of WSDI, its parents, subsidiaries, or affiliates.  (Id. at 4.)

On October 14, 2014, the Court set a preliminary injunction hearing and, by consent, extended the TRO.  (ECF No. 73.)  Plaintiffs filed their Second Amended Complaint on October 22, 2014, which added WSRSI as a plaintiff.  (ECF No. 83.)  Plaintiffs then filed a Supplemental Brief in Support of Motion

for Preliminary Injunction on October 23, 2014.  (ECF No. 92.)
Defendants each filed briefs in opposition to a preliminary
injunction also on October 23, 2014.  (ECF Nos. 94-100.)  The
Court held a preliminary injunction hearing on October 24 and
25, 2014 and December 10, 2014.  (ECF Nos. 102, 104,[1] 141.)  By
consent of the parties (see ECF No. 106), on November 3, 2014,
the Court extended the TRO until an order is issued regarding
the Plaintiffs' request for preliminary injunction.  (ECF No.
109.)

Stover filed a Motion to Dismiss and in the Alternative
Motion for Summary Judgment on November 5, 2014.  (ECF No. 111.)
Arhaus filed a Motion to Dismiss or in the Alternative Motion
for Summary Judgment on November 10, 2014.  (ECF No. 115.)
Plaintiffs filed their response to these motions on December 11,
2014.  (ECF No. 134.)

By joint motion of Plaintiffs and Voelpel (ECF No. 121),
the Court granted a Permanent Injunction and Judgment as to
Voelpel on December 3, 2014.  (ECF Nos. 128, 129.)  Similarly,
by joint motion of Plaintiffs and Daugherty (ECF No. 132), the
Court granted a Permanent Injunction and Judgment as to
Daugherty on December 19, 2014.  (ECF No. 146.)

---

[1] The ECF Docket incorrectly lists the second day of the preliminary
injunction hearing as October 28, 2014; the second day of the hearing was in
fact held on Saturday, October 25, 2014.

## II.  LEGAL STANDARD

Pursuant to Rule 12(b)(1), a defendant may move to dismiss a plaintiff's complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, . . . or it can attack the factual basis for jurisdiction . . . ."  DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004).

> A facial attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party.  A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction.  On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  But the fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore binding in future proceedings.

United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994) (citations omitted).  Where a Rule 12(b)(1) motion challenges the factual basis for jurisdiction, "a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  Williams v. Hooah Sec. Servs., LLC, 729 F.Supp.2d 1011, 1012 (W.D. Tenn. 2010) (quoting Ohio Nat. Life Ins. Co. v. United

States, 922 F.2d 320, 325 (6th Cir.1990)) (internal quotation marks omitted).

## III. ANALYSIS

Plaintiffs' Second Amended Complaint asserts four grounds for relief:  (1) that all Defendants have engaged in actual and threatened misappropriation of trade secrets in violation of the TUTSA; (2) that Defendants Daugherty, Stover, and Voelpel have breached contracts; (3) that Brad Voelpel and Timothy Stover breached the duty of loyalty; and (4) that Defendants Stover and Arhaus engaged in tortious interference with contract.  (ECF No. 83.)

Defendants argue that the Court lacks diversity jurisdiction to hear this claim.  Each of the motions contain the same basic argument: (1) Williams-Sonoma, Inc. is a Delaware Corporation; (2) Arhaus is a citizen of Delaware, among other states; (3) Williams-Sonoma, Inc. is either "the real party in interest" or an indispensable party; (4) joinder or substitution of Williams-Sonoma, Inc. would destroy diversity; (5) diversity jurisdiction was improperly or collusively manufactured in violation of 28 U.S.C. § 1359; and (6) therefore, the case must be dismissed for lack of subject matter jurisdiction.  (See ECF Nos. 111-1, 116.)  Premises (1), (2), and (4) are undisputed. The Court therefore focuses its analysis on whether Williams-Sonoma, Inc. is either the real party in interest or an

indispensable party, and whether diversity jurisdiction was manufactured.  For the reasons described below, the Court finds that Williams-Sonoma, Inc. is neither the real party in interest nor an indispensable party.  Further, the Court finds no impropriety or collusion in violation of 28 U.S.C. § 1359.

### A.   Real Party in Interest

According to Rule 17(a)(1), "an action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  "The effect of this passage is that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right."  6A Wright, Miller & Kane, Federal Practice & Procedure § 1543 (3d ed. 2010).  "To determine whether the requirement that the action be brought by the real party in interest has been satisfied, the court must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief."  § 1544.  The Court therefore considers each of Plaintiffs' grounds for relief in turn to determine if the action has been properly instituted by a party possessing the substantive right to relief.

### 1. Trade Secrets

Trade secrets are protected in Tennessee by the Tennessee Uniform Trade Secrets Act ("TUTSA").  See Tenn. Code Ann. § 47-25-1702(1) et seq. (West 2014).  "TUTSA lists three requirements for information to be considered a trade secret: (1) the information must derive independent economic value from not being generally known, (2) others could obtain economic value from its disclosure or use, and (3) efforts have been made to maintain its secrecy."  J.T. Shannon Lumber Co. v. Barrett, 2:07-cv-2847-jpm-cgc, 2010 WL 3069818, at *4 (W.D. Tenn. Aug. 4, 2010) (citing Tenn. Code Ann. § 47-25-1702(4)).

TUTSA prohibits misappropriation of trade secrets, providing for both injunctive relief and damages.  §§ 47-25-1702–1704.  "Misappropriation" means, in relevant part, either acquisition by a person who knows or has reason to know the trade secret was acquired by improper means, or disclosure without consent of a trade secret by a person who knows or has reason to know that it was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.  § 47-25-1702(2).  "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means."  § 47-25-1702(1)(a).

Who has the right to bring a trade secret claim appears to be a question that has not been decided under Tennessee law. Many courts, however, have construed analogous Uniform Trade Secrets Act statutes. See Metso Minerals Indus. v. FLSmidth-Excel LLC, 733 F. Supp. 2d 969, 978 (E.D. Wis. 2010) (collecting cases). Courts that have considered this question have generally come to the same conclusion: a party has standing to bring a trade secrets claim if it has possession of the trade secret. See id. Defendants' argument is that Plaintiffs have no right to enforce a trade secrets claim because it is WSI that owns the trade secrets at issue. (ECF No. 111-1 at 7; ECF No. 116 at 10.) In DTM Research, L.L.C. v. AT & T Corp., the Fourth Circuit addressed this argument in construing an analogous statute:

> [T]he question of whether "fee simple ownership" is an element of a claim for misappropriation of a trade secret may not be particularly relevant in this context. While trade secrets are considered property for various analyses, the inherent nature of a trade secret limits the usefulness of an analogy to property in determining the elements of a trade-secret misappropriation claim. The conceptual difficulty arises from any assumption that knowledge can be owned as property. The "proprietary aspect" of a trade secret flows, not from the knowledge itself, but from its secrecy. It is the secret aspect of the knowledge that provides value to the person having the knowledge. The Maryland Uniform Trade Secrets Act thus defines a trade secret as information that has value because it is not "generally known" nor "readily ascertainable." While the information forming the basis of a trade secret can be transferred, as with personal property, its continuing secrecy provides the value, and any general disclosure destroys the value. As a consequence, one "owns" a trade

secret when one knows of it, as long as it remains a
secret.  Thus, one who possesses non-disclosed knowledge
may demand remedies as provided by the Act against those
who "misappropriate" the knowledge.

245 F.3d 327, 332 (4th Cir. 2001) (citations omitted).  The

Fourth Circuit's logic is persuasive.  The Court finds that "the

focus is appropriately on the knowledge, or possession, of the

trade secret, rather than on mere 'ownership' in the traditional

sense of the word."  DaimlerChrysler Servs. v. Summit Nat., No.

02-71871, 2006 WL 1420812, at *8 (E.D. Mich. May 22, 2006),

aff'd sub nom. Daimler-Chrysler Servs. N. Am., LLC v. Summit

Nat., Inc., 289 F. App'x 916 (6th Cir. 2008).

    The Court finds that WSDI and WSRSI possessed trade secrets

and thus each has a substantive right to relief.  Plaintiffs

have put forth substantial proof to show that WSDI and WSRSI

possessed information that derived independent economic value by

virtue of not being known, and it is that information that they

allege was misappropriated by Defendants.  (See, e.g., Prelim.

Inj. Hr'g Tr. 109:13–127:22, Oct. 24, 2014, ECF No. 108

(testimony of Steve Anderson) (describing a complex,

confidential RFP process for ocean carriers that was allegedly

taken by Defendants); Anderson Decl. ¶ 3, ECF No. 138

(describing the ocean carrier RFP process as having been

developed by both WSRSI and WSDI)).  Defendants have failed to

put forth any persuasive argument that WSDI and WSRSI did not

possess trade secrets that they have alleged were misappropriated. Instead, Defendants argue that WSI also possessed the same trade secrets. (See ECF No. 111-1 at 9-10; ECF No. 116 at 8-9.) Multiple entities, however, can possess the same trade secret, so long as the knowledge is not "generally known." See DTM Research, L.L.C., 245 F.3d at 332. Accordingly, the Court finds that, for the purposes of this order, Plaintiffs have established by a preponderance of the evidence that they are real parties in interest pursuant to Rule 17(a)(1) with the substantive right to pursue their trade secrets claims under the TUTSA.

2. *Breach of Contract*

With the exception of third-party beneficiary claims, those who are not parties to a contract in the State of Tennessee generally have no right to sue for its breach. Owner-Operator Independent Drivers Association, Inc. v. Concord EFS, Inc., 59 S.W.3d 63, 68 (Tenn. 2001). Therefore, under Tennessee contract law, only those who are parties to a contract or third-party beneficiaries thereof have a substantive right to enforce a contract.

The Court finds that Plaintiffs have a substantive right to bring a breach of contract action against Defendants Daugherty, Stover, and Voelpel. In order to find that a plaintiff has a right to enforce a contract, the court must make two findings:

14

first, that there is in fact a contract; and, second, that the plaintiff was a party to, or third-party beneficiary of, that contract.  In this case, the purportedly breached contract was the "Williams-Sonoma, Inc. Code of Business Conduct and Ethics" ("Code of Conduct") (ECF No. 13-6).

The Court finds that the Code of Conduct is a contract under Tennessee law.  A document such as an employee handbook is contractually binding under Tennessee law when it "contain[s] specific language showing the employer's intent to be bound by the handbook's provisions."  Reed v. Alamo Rent-A-Car, Inc., 4 S.W.3d 677, 687 (Tenn. Ct. App. 1999) (quoting Rose v. Tipton Cnty. Pub. Works Dep't, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997)).  The Code of Conduct specifically states that it "serves as an agreement between you and the Company" (ECF No. 13-6 at PageID 95) and that the agreement is "in exchange for your employment, and the payment to you of salary, bonus, equity awards, and other compensation" (id.).  Because the language unambiguously shows an intent to be bound, the Code of Conduct is a contract.

At the TRO hearing, the individual Defendants did not contest that they each signed the Code of Conduct.  The individual Defendants were thus parties to the contract.

To determine whether Plaintiffs were parties to the Code of Conduct, the Court looks to the language of the contract itself.

There are three provisions in the Code of Conduct relevant to determining whether or not Plaintiffs were parties to the contract:

1. References in the Code of Conduct to we, us, our, Williams-Sonoma, WSI or the Company are generally intended to mean Williams-Sonoma, Inc. and all its affiliates, divisions, brands and subsidiaries, including its global subsidiaries, stores and offices. (Id. at PageID 94.)

2. This Code of Conduct also serves as an agreement between you and the Company. (Id. at PageID 95.)

3. [W]e ask you to enter into this agreement, in exchange for your employment, and the payment to you of salary, bonus, equity awards and other compensation. (Id.)

It is not contested that WSDI and WSRSI are subsidiaries of WSI. Therefore, references to "the Company" in the contract also include WSDI and WSRSI. The Code of Conduct specifically states that it serves as an agreement between the employee "and the Company," which includes WSDI and WSRSI. Plaintiffs are therefore parties to the contract and thus real parties in interest pursuant to Rule 17(a)(1) with the substantive right to pursue their breach of contract claims against Daugherty, Stover, and Voelpel.

### 3. Fiduciary Duty of Loyalty

Under Tennessee law, an employee owes his employer a fiduciary duty of loyalty: "An employee must act solely for the benefit of the employer in matters within the scope of his employment. The employee must not engage in conduct that is

16

adverse to the employer's interests." _Efird v. Clinic of_
_Plastic & Reconstructive Surgery, P.A._, 147 S.W.3d 208, 219
(Tenn. Ct. App. 2003) (internal quotation marks omitted).  Thus,
in order to bring an action for a breach of a fiduciary duty of
loyalty, a plaintiff must have an employment relationship with
the defendant.  Under Tennessee law, "[a]n employment
relationship is essentially contractual." _Vargo v. Lincoln_
_Brass Works, Inc._, 115 S.W.3d 487, 491 (Tenn. Ct. App. 2003).
"An employment agreement may be written, oral, or a combination
of the two."  _Id._  "If written, it may be memorialized in a
single document or in a series of documents."  _Id._

     The Court finds, for the purposes of this order, that WSDI
and WSRSI had employment relationships, respectively, with
Stover and Voelpel.  The Code of Conduct was a document that
memorialized part of Stover's and Voelpel's employment, as it
was entered into "in exchange for [their] employment, and the
payment to [them] of salary, bonus, equity awards and other
compensation."  (ECF No. 13-6 at PageID 95.)  Arhaus and Stover
argue that Stover and Voelpel were in fact employed by WSI.
(ECF No 111-1 at 11-12, 13; ECF No. 116 at 9-10.)  Defendants'
arguments, however, are unpersuasive; nothing in Tennessee law
suggests that an employee may only have one employer.  Indeed,
the Tennessee workers' compensation statute expressly provides
that an employee may have joint employers.  See _Moore v. Howard_

<u>Baer, Inc.</u>, No. M200802357WCR3WC, 2009 WL 3321377, at *3 (Tenn. Workers Comp. Panel Oct. 15, 2009). In the instant case, both Stover and Voelpel signed the Code of Conduct with WSDI and WSRSI respectively. Further, Stover was paid by WSDI and Voelpel by WSRSI. (Prelim. Inj. Hr'g Tr. 45:23–45:24, Oct. 24, 2014, ECF No. 108; <u>id.</u> at 46:12–46:14.) Although there is evidence that WSI employed Stover and Voelpel, (<u>see</u> Prelim. Inj. Hr'g Exs. 42–49), the evidence suggests that WSI may be a joint employer -- not a sole employer. (<u>See also</u> Prelim. Inj. Hr'g Ex. 50 (showing both "Williams-Sonoma, Inc." and "Williams-Sonoma Direct, Inc." in the "Employer's name" section of Stover's W-2 forms in 2011, 2012, and 2013).) Accordingly, Plaintiffs are real parties in interest pursuant to Rule 17(a)(1) with the substantive right to pursue their breach of the fiduciary duty of loyalty claims against Stover and Voelpel.

    4.    *Tortious Interference with Contract*

"Tennessee undoubtedly does recognize both a statutory and common law action for unlawful inducement of a breach of contract." <u>Quality Auto Parts Co. v. Bluff City Buick Co.</u>, 876 S.W.2d 818, 822 (Tenn. 1994) (citing Tenn. Code Ann. § 47-50-109 (1988 & Supp. 1993); <u>Polk & Sullivan, Inc. v. United Cities Gas Co.</u>, 783 S.W.2d 538, 543 (Tenn. 1989)). The elements of the statutory and common law actions are the same. <u>See id.</u> "In order to establish such a cause of action, a plaintiff must

prove that there was a legal contract, of which the wrongdoer was aware, that the wrongdoer maliciously intended to induce a breach, and that as a proximate result of the wrongdoer's actions, a breach occurred that resulted in damages to the plaintiff." Id. In this context, malicious intent "simply means a willful violation of a known right . . . ." Riggs v. Royal Beauty Supply, Inc., 879 S.W.2d 848, 851 (Tenn. Ct. App. 1994).

The Court finds that Plaintiffs have the right to bring claims of tortious interference with contract against Arhaus and Stover. There was a legal contract in this case between Plaintiffs and Daugherty and Voelpel. See supra Part III.A.2. Further, Plaintiffs have alleged that Arhaus and Stover were aware of the contract and that they suffered damages as a result. Accordingly, Plaintiffs are real parties in interest pursuant to Rule 17(a)(1) with the substantive right to pursue their tortious interference with contract claims against Arhaus and Stover.

### B. Indispensable Party

Defendants contend that WSI is an indispensable party under Rule 19, and that this action must therefore be dismissed under Rule 12(b)(7). (ECF No 111-1 at 8–9; ECF No. 116 at 11–16.)

"The current phrasing of Rule 19 reflects the 1966 amendment of the rule. The changes eschew rigid application and

adopt a more pragmatic approach." <u>Glancy v. Taubman Centers</u>,

Inc., 373 F.3d 656, 665 (6th Cir. 2004). "Ideally, all . . .

parties would be before the court. Yet Rule 19 calls for a

pragmatic approach . . . ." <u>Smith v. United Bhd. of Carpenters</u>,

685 F.2d 164, 166 (6th Cir. 1982). "Thus, the rule should be

employed to promote the full adjudication of disputes with a

minimum of litigation effort." 7 Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice & Procedure Civil

§ 1602 (3d ed. 2001).

"As the Fifth Circuit indicated in <u>Schutten v. Shell Oil</u>

<u>Company</u>,[ 421 F.2d 869, 873 (5th Cir. 1970),] the essence of

Rule 19 is to balance the rights of all those whose interests

are involved in the action." <u>Id.</u> According to the <u>Schutten</u>

court:

> The plaintiff has the right to "control" his own litigation
> and to choose his own forum. This "right" is, however,
> like all other rights, "defined" by the rights of others.
> Thus the defendant has the right to be safe from needless
> multiple litigation and from incurring avoidable
> inconsistent obligations. Likewise the interests of the
> outsider who cannot be joined must be considered. Finally
> there is the public interest and the interest the court has
> in seeing that insofar as possible the litigation will be
> both effective and expeditious.

421 F.2d at 873.

The Sixth Circuit uses a three-part test to determine

whether a party is indispensable under Rule 19. <u>Laethem Equip.</u>

<u>Co. v. Deere & Co.</u>, 485 F. App'x 39, 43 (6th Cir. 2012).

"First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." <u>Glancy v. Taubman Centers, Inc.</u>, 373 F.3d 656, 666 (6th Cir. 2004). "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." <u>Id.</u> "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable." <u>Id.</u> (internal citation and quotation marks omitted).

### 1. *WSI as a Necessary Party*

A party is necessary under Rule 19 if either:

> (1) in the party's absence, the court cannot accord complete relief among existing parties, Fed. R. Civ. P. 19(a)(1)(A), or (2) if the party claims an interest relating to the subject of the action and disposing of the action in the party's absence may (i) as a practical matter impair or impede the party's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring multiple or otherwise inconsistent obligations because of the interest, Fed. R. Civ. P. 19(a)(1)(B).

<u>Laethem Equipment</u>, 485 F. App'x at 44. Neither Defendants nor Plaintiffs argue that the Court cannot accord complete relief among existing parties. At issue in this case is whether WSI is a necessary party under Rule 19(a)(1)(B). To demonstrate that WSI is a necessary party, the burden is therefore on the

Defendants to demonstrate (1) that WSI "claims an interest relating to the subject of the action," and either (2) that proceeding in WSI's absence may "as a practical matter impair or impede [WSI's] ability to protect the interest" or (3) that proceeding in WSI's absence may "leave an existing party subject to a substantial risk of incurring multiple or otherwise inconsistent obligations."  Before analyzing the facts of this case, the Court first considers the legal requirements of each of these conditions to establish an absent party as a necessary party.

> a.  *"Claims an Interest"*

Courts disagree about the import of the phrase "claims an interest relating to the subject of the action" in Rule 19(a)(1)(B), interpreting it in one of two ways.  The first set of cases interprets the phrase as a requirement that the absent party affirmatively assert an interest in the subject matter of the litigation.  E.g., Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996); Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983).  The second set of cases indicate that the phrase requires that the absent party simply have a legal interest in the subject of the action.  See, e.g., Shermoen v. United States, 982 F.2d 1312 (9th Cir. 1992); Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 1310 (5th Cir. 1986).  In contrast to the first set of cases, however, cases in

the second set tend not to analyze the meaning of the phrase, eliding a discussion of the meaning of the text. Instead, these cases follow a different pattern by first recognizing that an absent party has a legal interest and then moving on to a determination of subsections (i) and (ii) of Rule 19(a)(1)(B).

Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 43 (2d Cir. 1996), is an example of a case of the first type. In Segal, two companies based in Myanmar sued a former officer and director of the companies. Some of the allegations implicated a joint venture agreement to which the Myanmar Ministry of Fisheries was a party. Segal made a motion to dismiss under Rule 12(b)(7), arguing that the Ministry was an indispensable party under Rule 19. The Second Circuit found that "Segal's argument fails here if only because the Ministry has not 'claim[ed] an interest relating to the subject of the action.'" 89 F.3d at 49 (quoting Rule 19(a)(1)(B)). The Segal court indicated that it was irrelevant whether the Ministry could be affected by the court's judgment because "[it] is the absent party that must 'claim an interest.'" Id. (quoting Rule 19(a)(1)(B)). Because the Ministry had not made a claim relating to the subject of the action, the Second Circuit found that it was not a necessary party under Rule 19(a)(1)(B).

<u>Shermoen v. United States</u>, 982 F.2d 1312 (9th Cir. 1992)

provides an example of the second type of case,[2] in which

establishing that an absent party has a legal right related to

the subject of the action is sufficient to establish that the

absent party "claims an interest."  In <u>Shermoen</u>, the Ninth

Circuit considered an appeal from the District Court for the

Northern District Court of California.  The District Court had

dismissed the action under Rule 19 for failure to join an

indispensable party.  <u>Shermoen</u> concerned a suit filed by seventy

individual Native Americans and the Coast Indian Community of

Yurok Indians of the Resighini Rancheria against the United

States, in which the plaintiffs sought, <u>inter alia</u>, a

declaration that the Hoopa-Yurok Settlement Act was

unconstitutional.  982 F.2d at 1314.  The Hoopa and Yurok tribes

were not parties to the action.  <u>Id.</u>  Intervenors in the action

argued that the absent tribes were indispensable parties, and

the district court agreed.  <u>Id.</u> at 1316–17.  In reviewing the

district court's decision, the Ninth Circuit articulated two

prongs to the determination of whether a party is "necessary"

under Rule 19(a): "a court must consider whether 'complete

relief' can be accorded among the existing parties, and whether

the absent party has a 'legally protected interest' in the

---

[2] Although <u>Shermoen</u> is of the second type, case law of the first type also
exists in the Ninth Circuit, both before and after <u>Shermoen</u>.  <u>See</u> <u>Northrop
Corp. v. McDonnell Douglas Corp.</u>, 705 F.2d 1030, 1043 (9th Cir. 1983); <u>United
States v. Bowen</u>, 172 F.3d 682, 689 (9th Cir. 1999).

subject of the suit." Id. at 1317 (quoting Makah Indian Tribe

v. Verity, 910 F.2d 555, 558 (9th Cir. 1990)). With respect to

the second prong, the Shermoen court stated, "the finding that a

party is necessary to the action is predicated only on that

party having a claim to an interest . . . ." Id. Without any

finding that the absent tribes had actually affirmatively

indicated any interest in the suit, the Ninth Circuit still

found the absent tribes necessary parties: "In this case, the

absent tribes have an interest . . . . The district court was

therefore correct in concluding that the tribes were necessary

parties." Id.

The limited relevant Sixth Circuit precedent indicates that

the Sixth Circuit follows the second approach. In Jenkins v.

Renau, 697 F.2d 160 (6th Cir. 1983), the plaintiff, as an heir

at law, employed defendant attorneys to bring an action against

a nursing home following the death of his mother. At the time

the lawsuit was filed, Jenkins had a sister who was the only

other heir but not a party to the suit. Id. at 161. The

defendants filed a motion to dismiss for failure to join an

indispensable party as required by Rule 19. Id. The Sixth

Circuit found that the sister had a legal interest in the

subject of the action, and found that she was a necessary party

under Rule 19(a). Id. at 162–63. Because the Jenkins court

never even considered whether the sister had affirmatively

indicated any interest in the suit while still finding her to be a necessary party, an affirmative claim does not appear to be required in the Sixth Circuit for Rule 19(a)(1)(B) to apply; all that is necessary under Rule 19(a)(1)(B) is a finding that an absent party has a legal interest in the subject of the action.[3]

> b. *"May as a Practical Matter Impair or Impede [WSI's] Ability to Protect the Interest"*

Once an absent party is shown to "claim an interest," one of two showings must be made to demonstrate that absent party is a necessary party. The first showing is that proceeding without the absent party may "as a practical matter impair or impede the party's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). The most apparent risk to the absent party, WSI, is the possibility of preclusive effect of any judgment in this case or the creation of otherwise adverse persuasive precedent. Many courts considering this risk have found that it amounts, as a practical matter, to impairing the absent party's interest. See, e.g., Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc., 960 F. Supp. 701, 708 (S.D.N.Y. 1997) (opinion of Sotomayor, J.) (holding that the creation of "persuasive authority for another court's interpretation of the

---

[3] Plaintiffs cite a case out of the Middle District of Tennessee that came to a contrary conclusion to argue that this Court should require an affirmative claim. (ECF No. 135 at 20 (citing Harvill v. Harvill, No. 3:12-CV-00807, 2013 WL 1245729, at *4 (M.D. Tenn. Mar. 27, 2013).) The court in Harvill, however, failed to cite Jenkins or, indeed, any Sixth Circuit case in its Rule 19(a) analysis. Accordingly, this Court declines to follow the rule in Harvill.

contract" at issue would "undoubtedly have a <u>practical</u> effect on any subsequent action brought by" the absent party); <u>Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.</u>, 11 F.3d 399, 409 (3d Cir. 1993) ("If issue preclusion or collateral estoppel could be invoked against [the absent party] in other litigation, continuation of the federal action could 'as a practical matter impair or impede' [the absent party's] interests and so Rule 19(a)[(1)(B)(i)] would require its joinder if joinder were feasible."); <u>HS Res., Inc. v. Wingate</u>, 327 F.3d 432, 439 (5th Cir. 2003) ("[T]he presence of the [absent parties] is not required unless the judgment 'effectively precludes them from enforcing their rights and they are injuriously affected by the judgment.'" (quoting <u>Hilton v. Atl. Ref. Co.</u>, 327 F.2d 217, 219 (5th Cir. 1964))); <u>see generally</u> William J. Katt, Comment, <u>Res Judicata and Rule 19</u>, 103 Nw. U. L. Rev. 401, 417 (2009). Other circuits hold that so long as the absent party's interests are adequately represented, the absent party's interests are not impaired by non-joinder. <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.</u>, 210 F.3d 246, 250-51 (4th Cir. 2000) ("If [a present party] is able adequately to represent [the absent party's] interest, we would be inclined to conclude that [the absent party's] ability to protect its interest is not impaired or impeded by its absence from this suit."); <u>see also</u> Katt, <u>supra</u> at 417 n.126 (explaining that the

First and Ninth Circuits have conflicting precedent on this issue, some following the former approach and some following the latter).

It is not clear which approach the Sixth Circuit follows. According to Judge Moore in a section of Glancy v. Taubman Centers, Inc. that failed to obtain a majority of the panel, "[a]dequate representation should be considered as a part of the Rule 19(b) analysis, and not the threshold Rule 19(a) analysis." 373 F.3d 656, 668 (6th Cir. 2004). The implication is that to the extent an absent party could be impaired by preclusive effects of a judgment in a case sub judice, it is not appropriate for a court to consider the potentially ameliorative effects of adequate representation when considering Rule 19(a). This would suggest that the Sixth Circuit follows the former approach.

A different result, however, was reached by the Sixth Circuit in an unpublished opinion when the issue arose in American Express Travel Related Service, Co., Inc. v. Bank One-Dearborn, N.A. 195 Fed. App'x 458 (6th Cir. 2006). In that case, the third-party defendant, the Federal Reserve Bank of Chicago ("FRBC") moved to dismiss for failure to join Plus International Bank ("Plus"). Id. at 459. Under the regulation at issue, a finding of liability as to FRBC necessarily rendered the Plus liable to FRBC. Id. at 460. Plus therefore assumed

FRBC's defense of the litigation.  Id.  As a result, the Sixth

Circuit found that "Plus's interests [were] virtually identical

to those of FRBC, and its defense of FRBC [would] allow Plus to

protect its interests."  Id. at 461.  Further, the Sixth Circuit

found that "Plus's interests [were] adequately represented by

FRBC, and Plus would not be disadvantaged by not being joined as

a party."  As a result, the court held that the district court

had abused its discretion in finding that Plus was a necessary

party.  Id.

This Court finds the reasoning in American Express Travel

Related Service, Co., Inc. to be highly persuasive.  Rule

19(a)(1)(B) directs a court to consider whether proceeding

without an interested absent party may "as a practical matter

impair or impede the party's ability to protect the interest."

The key language in Rule 19(a)(1)(B)(i) is "as a practical

matter."  Rule 19(a) "recognizes the importance of protecting

the person whose joinder is in question against the practical

prejudice to him which may arise through a disposition of the

action in his absence."  Fed. R. Civ. P. 19(a) advisory

committee's note (emphasis added).  If an absent party is

adequately represented, then there is no practical prejudice to

the absent party.[4]

_____

[4] The Court agrees with Stover that a contrary result has been reached in many
other cases involving an absent joint obligee on a contract.  (See ECF No.
111-1 at 5.)  According to Wright, Miller, & Kane, joint obligees to a

29

### c. "Substantial Risk of Incurring Multiple or Otherwise Inconsistent Obligations"

Plaintiffs argue that an absent party is necessary under Rule 19(a)(1)(B)(ii) only if there is a risk that an existing party could be subject to incompatible obligations. The Court agrees. "While it is true that the Federal Rules encourage the joinder of parties where such joinder would appear to avoid multiple actions or unnecessary delay and expense, this practice should not penalize bona fide litigants who have a valid cause of action, choose the forum which they think proper, and ask for specific relief." Field v. Volkswagenwerk AG, 626 F.2d 293, 302 (3d Cir. 1980). "Rule 19 does not speak of inconsistent 'results.' Rather, it speaks in terms of inconsistent 'obligations.'" Bedel v. Thompson, 103 F.R.D. 78, 81 (S.D. Ohio 1984). Consequently, whether a party faces the possibility of multiple actions -- and potentially even logically inconsistent

---

contract "usually have been held indispensable parties and their nonjoinder has led to a dismissal of the action." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1613 (3d ed. 2001); see also Ryan v. Volpone Stamp Co., 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party."); Ragan Henry Broad. Grp., Inc. v. Hughes, No. CIV. A. 91-CV-6157, 1992 WL 151308, at *2 (E.D. Pa. June 19, 1992) ("Generally, where rights sued upon arise from a contract, all parties thereto must be joined."); Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991) ("The court's research has failed to find any case on similar facts that has held that a party to a contract is not an indispensable party. In fact, the precedent supports the proposition that a contracting party is the paradigm of an indispensable party."). Each of the cited cases that reached a contrary result, however, is distinguishable from the instant case, as each involved an absent party that was not likely to be precluded from future litigation. Accordingly, the Court follows the guidance of the Sixth Circuit given in American Express Travel Related Service, Co., Inc.

judgments -- is irrelevant if the party is not at risk of inconsistent obligations.  See, e.g., id.; Field, 626 F.2d 301-02; 4 Moore's Federal Practice § 19.03[4][d] (Matthew Bender 3d ed.).

### d.   Necessary Party Analysis

Rule 19(a)(1)(B)'s threshold condition -- that WSI claim an interest in the subject matter of this action -- is easily met. See Ente Nazionale Idrocarburi v. Prudential Sec. Grp., Inc., 744 F. Supp. 450, 458 (S.D.N.Y. 1990) (holding that absent party had "real interests that are clearly at stake in this action" where absent party "has clear rights and affirmative obligations under the contract which [the court] must construe").  WSI also possessed the trade secrets in this case and was also a party to the Code of Conduct.  WSI is not, however, a necessary party under either Rule 19(a)(1)(B)(i) or (ii).

### i.   Rule 19(a)(1)(B)(i)

Proceeding in the absence of WSI would not, as a practical matter, impair or impede its ability to protect its interest. As will be explained below, WSI is adequately represented in this litigation.  Therefore, even though there is a substantial risk of preclusive effect as to WSI (as will be explained in the next section, infra), it is not a necessary party.  In American Express Travel Related Service, Co., Inc., the Sixth Circuit

applied the Ninth Circuit's test to determine whether an absent

party was adequately represented:

> whether the interests of a present party to the suit are
> such that it will undoubtedly make all of the absent
> party's arguments; whether the party is capable of and
> willing to make such arguments; and whether the absent
> party would offer any necessary element to the proceedings
> that the present parties would neglect.

195 F. App'x at 461 (quoting Shermoen, 982 F.2d at 1318)

(internal quotation marks omitted).

The Court finds that the interests of Plaintiffs are such

that they will undoubtedly make all the arguments that WSI would

make for two reasons. First, it is apparent that WSI is

controlling the litigation on behalf of WSDI and WSRSI. High-

level executives at both WSRSI and WSDI report directly to a C-

suite executive of WSI. (See Prelim. Inj. Hr'g Tr. 64:9-64:13,

Oct. 24, 2014, ECF No. 108.) Plaintiffs are wholly owned

subsidiaries of WSI. (See id at 42:16-42:19, 176:19-176:21.)

Further, each entity exists solely to provide services to WSI.

(See id. at 176:22-177:1; 178:11-179:12.) Because of the close

corporate relationship of the entities with WSI and their status

as wholly owned subsidiaries, it is apparent that WSI is

controlling this litigation.

Second, the nature of the injuries to Plaintiffs that are

alleged are such that WSI has been harmed in an identical

manner. The trade secrets were both WSI's and its subsidiaries'

and it was a party to the same contract with Stover, the Code of Conduct, as were Plaintiffs.  In light of the foregoing, Plaintiffs will undoubtedly make all of the arguments that WSI would.  Additionally, because it is apparent that WSI is controlling this litigation, Plaintiffs are able and willing to make those arguments.  Last, Defendants have advanced no evidence that WSI would offer any necessary element to the proceedings that the present parties would neglect.  WSI is therefore adequately represented in this litigation such that proceeding in its absence does not, as a practical matter, risk impairing or impeding WSI's ability to protect its interest.

*ii.  Rule 19(a)(1)(B)(ii)*

The Court also finds that WSI is not a necessary party under Rule 19(a)(1)(B)(ii).  Plaintiffs argue that there is no substantial risk to WSI of "of incurring multiple or otherwise inconsistent obligations."  (ECF No. 135 at 20-21.)  According to Plaintiffs, the only obligation that another court could issue that would be inconsistent with the obligations sought in this case would be an order for the defendants to use or disseminate Plaintiffs' trade secrets and confidential information.  (Id. at 22 n.14.)  The Court disagrees.  In a case such as this, any injunctive relief awarded is likely to be lengthy, technical, and detailed.  Were injunctive relief to be awarded, the Court agrees that part of that relief would likely

be an order not to use or disseminate Plaintiffs' trade secrets. Exactly how Defendants would be required to go about that would include technical details, including the specifics of third-party monitoring and mechanisms for securing and removing such information.

Rule 19(a)(1)(B)(ii) does not, however, direct a court to look to whether there is some risk of substantially inconsistent obligations; instead, Rule 19(a)(1)(B)(ii) directs a court to determine whether there is a substantial risk of any inconsistent obligations. "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998). It does not matter that such inconsistent obligations may be de minimis. If an existing party has a substantial risk of conflicting obligations due to the absence of some party, then Rule 19 requires a court to find the absent party a necessary party.

In this case, no such substantial risk is present for two reasons. First, the Court finds that a judgment in this case is likely to have preclusive effect against WSI. Although a finding of preclusive effect of a judgment against a nonparty "runs up against the 'deep-rooted historic tradition that everyone should have his own day in court' . . . , the rule

against nonparty preclusion is subject to exceptions." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892–93 (2008) (quoting <u>Richards v. Jefferson Cnty., Ala.</u>, 517 U.S. 793, 798 (1996)). In <u>Taylor</u>, the Supreme Court listed six exceptions to the general rule, at least one of which is applicable to this case[5]: when the nonparty "'"assume[d] control' over the litigation in which that judgment was rendered," <u>id.</u> at 895 (quoting <u>Montana v. United States</u>, 440 U.S. 147, 154 (1979)). "'[T]o have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action.'" <u>Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.</u>, 193 F.3d 415, 423 (6th Cir. 1999) (quoting <u>Benson & Ford, Inc. v. Wanda Petroleum Co.</u>, 833 F.2d 1172, 1174 (5th Cir. 1987)). Examples of such control include "'president/sole shareholder and his or her company, a parent corporation and its subsidiary, an indemnitor and its indemnitee, or a liability insurer and an insured.'" <u>Living Care Alternatives of Kirkersville, Inc. v. United States</u>, 247 F. App'x 687, 698 (6th Cir. 2007) (quoting <u>Becherer</u>, 193 F.3d at 423). Because Plaintiffs are wholly owned subsidiaries of the absent party at

---

[5] One of the exceptions listed was when the nonparty was "'adequately represented by someone with the same interests who [wa]s a party' to the suit," <u>id.</u> at 894 (quoting <u>Richards</u>, 517 U.S. at 798) (alterations in original). For the reasons stated in the Rule 19(a)(1)(B)(i) analysis, this exception may well apply in this case; however, because there is clear case law as to the control exception in <u>Taylor</u>, the Court declines to make a finding as to whether adequate representation would have preclusive effect as to WSI.

issue in this case -- and because they have such a close corporate relationship with the parent corporation -- the Court finds that it would be highly likely that any judgment in this court would have preclusive effect against WSI.  Plaintiffs, therefore, are not at risk of inconsistent obligations due to the high likelihood they would prevail with respect to asserting preclusion in any possibly subsequent litigation by WSI.

Second, the very issues that are being litigated in this case are the issues that would likely be litigated in a subsequent case by WSI.  As noted above, the trade secrets were both WSI's and its subsidiaries' and it was a party to the same contract with Stover, the Code of Conduct, as were Plaintiffs. Therefore, any issue that WSI would be likely to raise in a subsequent suit involving the incidents concerning this case are likely to have been actually litigated, and thereby subject to preclusion to the extent it applies.

Because WSI is likely to be precluded from relitigating the issues before the Court, Defendants are not at substantial risk of inconsistent obligations.  Accordingly, WSI is not a necessary party under Rule 19(a)(1)(B)(i).

> *e.   WSI Not an Indispensable Party*

Because WSI is not a necessary party under Rule 19(a)(1)(A), (B)(i), or (B)(ii), the Court finds that WSI is not

a necessary party.  Moreover, because WSI is not a necessary party, WSI is also not an indispensable party.

### C.    No Improper or Collusive Creation of Subject-Matter Jurisdiction

Section 1359 of Title 28 of the United States Code directs that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  Where a case involves a fiduciary relationship, which the Court assumes is present between Plaintiffs and WSI for the purposes of this analysis, the party arguing against a violation of § 1359 "must show that the primary purpose for the appointment of the fiduciary is not to manufacture diversity of citizenship."  Gross v. Hougland, 712 F.2d 1034, 1038 (6th Cir. 1983).  "In the course of such an inquiry, several factors may be material: the court should consider, among other things, whether the fiduciary has duties other than prosecuting the lawsuit; whether the fiduciary is the 'natural' representative; whether the appointment was in fact motivated by a desire to create diversity jurisdiction; and whether the suit is local in character."  Id. at 1038–39.  There is nothing in the record to suggest -- and Defendants do not argue -- that the creation of Plaintiffs as corporate entities was performed in order to defeat diversity.  Nor is there any

evidence that any right was transferred or assigned in this case. Further, the evidence in the record suggests that Plaintiffs have existed as separate entities for years before this action began. The Court therefore finds no violation of § 1359 in this case.

**IV. CONCLUSION**

For the reason stated above, Defendants' motions to dismiss under Rules 12(b)(1) and 12(b)(7) in Defendant Timothy Stover's Motion to Dismiss and in the Alternative Motion for Summary Judgment (ECF No. 111) and Defendant Arhaus, LLC's Motion to Dismiss or in the Alternative Motion for Summary Judgment as to the Second Amended Complaint (ECF No. 115) are DENIED.

**IT IS SO ORDERED,** this 30th day of January, 2015.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE